73 F.3d 370
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,
LOCAL 745, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA,
LOCAL 745, AFL-CIO, Respondent.
 Nos. 93-70895, 93-71038.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 2, 1995.
Decided Dec. 19, 1995.
 
 Before: HUG, THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 United Brotherhood of Carpenters and Joiners of America, Local 745, AFL-CIO (Union), petitions for review of the National Labor Relations Board's (NLRB) decision finding the Union in violation of section 8(e) of the National Labor Relations Act (Act), 29 U.S.C. Sec. 158(e), for filing a grievance with the State Joint Board (SJB) and subsequently attempting to confirm the SJB's favorable ruling in federal district court. The Union's grievance was filed against S & M Sakamoto (S & M) for maintaining a "double-breasted" operation which, according to the Union, was prohibited by section 22C1(a) of the collective bargaining agreement (CBA) between the Union and S & M. The SJB agreed with the Union, but an administrative law judge (ALJ) and the NLRB held that the Union's grievance was itself an unfair labor practice because it was based on an interpretation of the CBA which, if correct, rendered section 22C1(a) illegal. The NLRB cross-petitions for enforcement of its order requiring the Union to cease and remedy its unfair labor practice. We affirm the decision of the NLRB and enforce the NLRB's order.
 
 DISCUSSION
 
 3
 We defer to the conclusions of the NLRB if they are "reasonable construction[s]" of the Act. Sparks Nugget, Inc. v. NLRB, 968 F.2d 991, 994 (9th Cir.1992). "We must uphold a Board rule as long as it is rational and consistent with the Act, even if we would have formulated a different rule had we sat on the Board." NVE Constructors, Inc. v. NLRB, 934 F.2d 1084, 1086 (9th Cir.1991) (internal quotations omitted).
 
 
 4
 The NLRB found the Union's filing and pursuit of a grievance based on an unlawful interpretation of the CBA to be a secondary device--i.e., an effort to acquire new work rather than preserve work traditionally performed by the Union. It was not merely that the Union filed and pursued a grievance, it was that the Union's "theory of what would constitute a contract violation amounted to enforcing the clause as if it were the equivalent of a clause that would be unlawful." United Brotherhood of Carpenters and Joiners of America, Local No. 745, AFL-CIO, 312 NLRB 136 (Sept. 30, 1993).
 
 
 5
 The Union's theory was that the CBA was violated merely by "double-breasting"--or common ownership of S & M and SC Pacific, a non-union building contractor. This interpretation, if correct, would render the contractual provision illegal because collective bargaining agreements cannot lawfully prohibit a signatory from simply owning a separate non-union business.
 
 
 6
 While the Act allows collective bargaining agreements to prohibit the use of "alter egos" to evade contractual responsibilities, in determining whether two entities are alter egos one must look beyond common ownership and assess the interrelatedness of management, supervision, operation, equipment, customers, and employees. See Asbestos Carting Corp., 302 NLRB 197 (1991); NLRB v. Don Burgess Construction Corp., 596 F.2d 378, 384 (9th Cir.), cert. denied, 444 U.S. 940 (1979). Common ownership, without more, provides no basis for asserting a violation of the anti-alter ego provision of the CBA.
 
 
 7
 If the CBA on its face prohibited S & M from simply owning a non-union business it would clearly be illegal under section 8(e) of the Act, which requires more than mere common ownership. See Western Union Corp., 224 NLRB 274 (1976), aff'd sub nom. United Telegraph Workers v. NLRB, 571 F.2d 665, 667 (D.C.Cir.), cert. denied, 439 U.S. 827 (1978). Just as the Union could not lawfully bargain for an illegal provision, it could not agree to a provision and then attempt to enforce an illegal construction of it.
 
 
 8
 Our decision in Nelson v. International Brotherhood of Electrical Workers, Local Union No. 46, 899 F.2d 1557 (9th Cir.1990), controls the outcome in this case. In Nelson, a union filed a grievance based on its interpretation of a provision in the union's collective bargaining agreement. Id. at 1559. Although the arbitrator agreed with the union's interpretation, the Regional Director of the NLRB filed a petition for a preliminary injunction to prevent enforcement of the arbitrator's decision on the ground that the union's and the arbitrator's interpretation of the provision rendered it unlawful under section 8(e) of the Act. Id. at 1560. We held the NLRB could enjoin enforcement because there were substantial grounds to believe that the provision, as construed by the union and enforced by the arbitrator, violated the Act. Id. at 1563.
 
 
 9
 Nelson stands for the proposition that one cannot create unlawful contractual obligations through arbitration. Attempting to do so amounts to an unfair labor practice under section 8(e) of the Act. This is precisely what the Union did in the present case.
 
 
 10
 The secondary nature of the Union's filing and pursuit of its grievance is revealed by the distinct business operations of S & M and SC Pacific. Not only are these two entities separate employers under the Act, but their businesses operate in different areas of construction. While S & M's principal business is, and has been for a long time, commercial, industrial, and governmental construction, SC Pacific's principal business is, and has always been, residential construction and renovation.
 
 
 11
 In light of this difference, there is no basis for the Union to claim that it was trying to preserve work traditionally performed by its members. By attempting to extend the CBA to SC Pacific, the Union engaged in an effort to acquire, not preserve, work.
 
 
 12
 The Union claims its goal was "primary" because "the grievance at issue in this case was directed to S & M" and the arbitrator's award "was only directed to S & M," not SC Pacific. This claim is untenable. Under the Union's approach, a contractual provision prohibiting an employer from doing business with any non-union entity--clearly violative of section 8(e) of the Act--could not be "secondary" because it is "directed" only to the signatory employer.
 
 CONCLUSION
 
 13
 The Union's petition for review is denied. The NLRB's cross-petition for enforcement of its order is granted.
 
 
 14
 Review DENIED; enforcement GRANTED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3